ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
PATRICIA A. DONAHUE (Cal. Bar No. 132610)
ELIZABETH R. YANG (Cal. Bar No. 196461)
Assistant United States Attorneys
    1300/1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-0640/1785
    Facsimile:  (213) 894-6436/3713
    E-mail:     patricia.donahue@usdoj.gov
                elizabeth.yang@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>JOSE DANILO AVELENDA,<br><br>        Defendant. | No. CR 11-949(A)-SJO<br><br>GOVERNMENT'S SENTENCING POSITION RE: DEFENDANT JOSE DANILO AVELENDA<br><br>Sent. Date:  June 16, 2014<br>Time:        9:00 a.m.<br>Location:   Courtroom of the<br>               Hon. S. James Otero |

    Plaintiff United States of America, by and through its counsel of record, hereby submits its position regarding the sentencing of defendant Jose Danilo Avelenda.

    This position is based upon the attached memorandum of points and authorities, the victim's statement that is filed concurrently herewith under seal, the Presentence Report, the files and records in

1  this case, and such further evidence and argument as the Court may

2  permit.

3

4  Dated: June 2, 2014                    Respectfully submitted,

5                                         ANDRÉ BIROTTE JR.
                                          United States Attorney
6
                                          ROBERT E. DUGDALE
7                                         Assistant United States Attorney
                                          Chief, Criminal Division
8

9                                                  /s/
                                          _____
10                                        PATRICIA A. DONAHUE
                                          ELIZABETH R. YANG
11                                        Assistant United States Attorneys

12                                        Attorneys for Plaintiff
                                          UNITED STATES OF AMERICA
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                 <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2   **I.**    **Introduction**

3         On January 7, 2014, defendant Jose Danilo Avelenda ("defendant")

4   pled guilty pursuant to a written plea agreement to Count Five of the

5   First Superseding Indictment, which charges him with transportation

6   of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(1) and

7   (b)(1).  (CR 73).  On April 5, 2014, the Presentence Report ("PSR")

8   was disclosed and filed.  (CR 74).  The sentencing is set for June

9   16, 2014.

10        In the plea agreement, the parties agreed that the following

11   sentence is an appropriate disposition of this case:  a term of

12   imprisonment within the range of five to seven years; a term of

13   supervised release of no less than five years, with conditions to be

14   fixed by the Court, including the conditions agreed to by defendant

15   in paragraph 2 of the plea agreement; restitution in an amount to be

16   determined; no fine; and a $100 special assessment.  (CR 70, Plea

17   Agmt. ¶ 16).  The mandatory minimum sentence that the Court must

18   impose is five years' imprisonment and five years of supervised

19   release.  <u>See</u> 18 U.S.C. §§ 2252A(a)(1) and (b)(1).

20        As set forth below, the nature and circumstances of the offense,

21   as well as defendant's history and characteristics, warrant a

22   sentence of seven years imprisonment and a term of supervised release

23   of ten years under the conditions set forth in paragraph two of the

24   plea agreement.  The facts underlying defendant's crime are set forth

25   in the PSR.  The impact of defendant's actions is laid out in the

26   letter submitted by victim E.C., the 17-year-old girl induced by

27   defendant to take a dangerous journey from El Salvador to Los Angeles

28   and required by defendant to engage in sex acts with him, repeatedly,

on camera, in El Salvador and in Los Angeles.[1] E.C. came from an impoverished family in El Salvador; defendant came from a middle-class family in El Salvador, attended private school, and moved to the United States when he was 19. At age 64, he traveled back to El Salvador to induce an impoverished teenage girl to engage in sex acts with him, which he recorded, and to move to the United States to live with him, in exchange for his false promises that she would have a better life and that her family would no longer have to worry about money. In fact, defendant abused E.C. physically and verbally, and required her to engaged in sex acts with him repeatedly, all recorded by the surveillance cameras that defendant had pointed at the bed. E.C. described the impact of defendant's crimes on her.

> I felt so bad about all that had happened to me; I cried every night. I no longer wanted to live after everything that happened; I was depressed and I sometimes wanted to take my life. I felt I was not worth anything, that I was just waste. And still now, while writing this letter, I get very tense and want to cry, and I feel very sad; I feel I do not deserve to be alive. I feel useless. He [defendant] repeated that to me so many times that sometimes I almost believe it.

(Victim Ltr., p. 3). Defendant's conduct warrants a sentence above the mandatory minimum. It also warrants a supervised release term of ten years, to ensure that defendant does not manipulate another vulnerable teenager the way that he did E.C.

Defendant undoubtedly will argue that his health conditions and age compel a sentence of five years imprisonment and no more than five years supervised release. However, the plea agreement, pursuant to which the government agreed to dismiss all but one count of the First Superseding Indictment and agreed to a sentence lower than the

---

[1] E.C.'s letter is filed concurrently herewith, under seal, and is referred to herein as "Victim Ltr."

advisory Guidelines range calculated by the PSR, already explicitly takes into account defendant's health and age:

> Defendant and the USAO agree that, taking into account the factors listed in 18 U.S.C. § 3553(a)(1)-(7) (in particular, defendant's age and poor health), . . . an appropriate disposition of this case is . . .

(Plea Agmt ¶ 16 (emphasis added)). The other circumstances of defendants' life – his upbringing, his successful immigration to the United States and establishment of a life here – are not mitigating; to the contrary, in light of the fact that he used his superior education and economic position to manipulate E.C., they are aggravating factors that warrant a sentence of seven years imprisonment followed by ten years supervised release.

The government does not seek restitution in light of the fact that government agencies paid the costs associated with the victim's losses in this case.

## II.  Summary of Pertinent Facts

On August 10, 2011, defendant flew from El Salvador, to Los Angeles with a video entitled "P1000190.mov," which depicts victim E.C., then 17 years old, engaged in sexually explicit conduct, including lascivious exhibition of the genitals. (CR 70, Plea Agmt. ¶ 12). At the time defendant transported this video, which is child pornography as defined by 18 U.S.C. § 2256(8)(A), from El Salvador into the United States, defendant knew that the video showed E.C. engaged in sexually explicit conduct. (Id.). In addition to the sex acts depicted in the video "P1000190.mov," defendant, who was born in 1947, had engaged in at least two separate instances of sexual acts with then 17-year-old E.C., and defendant possessed other vides of E.C. engaged in sexually explicit conduct. (Id.; PSR p. 2).

Defendant met E.C. after he had placed an advertisement in a Salvadoran newspaper seeking a 25-30 year old woman to relocate from El Salvador to Los Angeles to cook, clean, and take care of defendant.  (PSR ¶ 12).  Defendant, who was born and raised in a middle-class upbringing in El Salvador with the support of a loving family, received a private school education, and did not have to work until after graduation, had lived in the United States since he was 19 years old.  (PSR ¶¶ 55, 56).  E.C., whose family sometimes did not earn enough money for food, answered defendant's ad.  (PSR ¶ 14; Victim Ltr., p. 1).  Defendant spoke with E.C. by phone, asking about her age, her relationship status, and whether she had children. (Id.).  E.C. told defendant about her family's economic situation, and she asked him to offer her work.  (Victim Ltr., p. 1).  Defendant replied that he first wanted to meet E.C. in person, and he traveled to El Salvador.  (PSR ¶ 14; Victim Ltr., p. 1).  After defendant arrived in El Salvador, he told E.C. that he was 54 years old and was not looking for an employee, but for someone who would marry him and live with him.  (Victim Ltr., p. 1).  Defendant told E.C. that if she agreed to his proposition and traveled with him to the United States, he could help her mother and all of her family, and she would not have to worry about money ever again.  (Id.).  While in El Salvador, defendant stayed with E.C. in a hotel and recorded himself engaging in sexual intercourse with E.C. on multiple occasions.  (PSR ¶ 15).

On August 10, 2011, defendant flew back to Los Angeles carrying the memory card that contained the recordings of himself and E.C. engaging in sexual intercourse.  (PSR ¶ 16).  E.C. did not fly to Los Angeles with defendant.  Instead, defendant paid a smuggler to bring E.C. on a dangerous journey from El Salvador through Guatemala and

Mexico to Texas, and finally to defendant in Los Angeles. (Victim Ltr., pp. 1-2). After her arrival, E.C. resided with defendant in his apartment for approximately two weeks, until September 19, 2011, when she knocked on the door of a nearby residence and said that a man had brought her from El Salvador and made her his slave and abused her. (PSR ¶ 18). At the same time, defendant called 911 to complain that he was having a problem with his fiancé and admitted that she was a minor. (Id.). Defendant later told authorities that E.C. was from El Salvador and was illegally in the United States. (Id.). Defendant's statements to the police are consistent with the threats that he had made to E.C. when she was at defendant's apartment, namely, that he would turn E.C. over to the police, that she was illegal and not entitled to any rights, and that she would be put in jail. (Victim Ltr., p. 2).

Defendant required E.C. to have sex with him and watch pornographic films with him, and he verbally assaulted her. (Id.). Defendant threatened to kill E.C. and her family if she left him, and he hit her, pulled her hair, dragged her into his room, and locked her in. (Victim Ltr., p. 3). After two weeks, E.C. escaped and ran to a neighbor, who contacted the authorities. (Id.; PSR ¶ 18). In defendant's apartment, law enforcement found two video surveillance cameras pointed at defendant's bed and connected to a television and a DVR. (PSR ¶ 19). The surveillance system contained recorded footage of defendant and E.C. having sex on different occasions inside defendant's residence. (Id.).

## III. Sentencing Guidelines

In the plea agreement, the parties agreed that for defendant's offense of conviction, the base offense level is 22 pursuant to

U.S.S.G. § 2G2.2(a)(2) and that the five-level enhancement under U.S.S.G. § 2G2.2(b)(7)(D) applies because the offense involved 600 or more child pornography images. (CR 70, Plea Agmt ¶ 14). The parties also agreed not to argue that any other specific offense characteristics, adjustments, or departures be imposed. (Id.).

The PSR has similarly concluded that the base offense level is 22 pursuant to U.S.S.G. § 2G2.2(a)(2). (PSR ¶ 27). Consistent with the plea agreement, the PSR also applied the five-level enhancement under U.S.S.G. § 2G2.2(b)(7)(D), as defendant admitted to having possessed over eight video clips of child pornography, each video clip is considered the equivalent of 75 images, and a five-level enhancement applies if the offense involved 600 or more images. (U.S.S.G. § 2G2.2, comment. (n.4); PSR ¶¶ 33, 34). In addition, the PSR applied an enhancement not contained in the plea agreement, namely, a five-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(5) for a pattern of activity involving the sexual exploitation of a minor. (PSR ¶¶ 28 – 32). The PSR accordingly calculated the Adjusted Offense Level at 32. (PSR ¶ 38). With a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, the total offense level calculated by the PSR is 29. (PSR ¶ 42). Defendant's Criminal History Category is I. (PSR ¶ 48). At total offense level 29, Criminal History Category I, the advisory sentencing range calculated in the PSR is therefore 87 to 108 months.

As noted above, the plea agreement does not contain the five-level adjustment under U.S.S.G. § 2G2.2(b)(5) for a pattern of activity involving the sexual abuse or exploitation of a minor. In the plea agreement, the parties agreed not to argue that any other specific offense characteristics, adjustments or departures be

imposed. (CR 70, Plea Agmt ¶ 14).  In accordance with the plea agreement, the government does not seek the § 2G2.2(b)(5) adjustment, or any enhancement other than as set forth in the plea agreement.

Therefore, in accordance with the plea agreement, the government submits that the adjusted offense level is 27 (base offense level 22, plus five levels because the offense involved more than 600 child pornography images).  See U.S.S.G. §§ 2G2.2(a)(2), (b)(7)(D).  The government hereby requests that the Court apply the 3-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 which would result in a total offense level of 24.  At total offense level 24, Criminal History Category I, the advisory sentencing range is 51 to 63 months.

Defendant has been in custody since his arrest in this case on September 21, 2011.  (PSR ¶ 22).

## IV.  A Sentence of Seven Years Imprisonment and Ten Years Supervised Release is Warranted

In the plea agreement, the parties agreed that an appropriate disposition of this case includes a sentence of imprisonment between five and seven years.  (CR 70, Plea Agmt ¶ 16).  Defendant pled guilty to transportation of child pornography, which has a mandatory minimum sentence of five years.  See 18 U.S.C. §§ 2252A(a)(1), (b)(1).  The nature and circumstances of defendant's offense, as well as his history and characteristics, warrant a sentence above that mandatory minimum.

Defendant was born and raised in a middle-class upbringing in El Salvador, had the support of a loving family, received a private school education, and did not have to work until after graduation. He has lived in the United States since he was 19 years old.  (PSR ¶¶

55, 56).   In 2011, at the age of 64, defendant placed an advertisement in a newspaper in a Salvadoran newspaper seeking a 25-30 year old woman to relocate to Los Angeles to cook, clean, and take care of him.   (PSR ¶ 13).   When E.C. called defendant in response to the ad, he asked about her age and relationship status.   (Victim Ltr., p. 1).   After learning that E.C. was 17 years old, defendant did not tell her that he was looking for a woman between 25 and 30. On the contrary, he pursued her by calling her every day, flying to El Salvador to meet her, and telling her that her family would never have to worry about money ever again, provided that she agreed to his proposition.   (Id.).   Defendant exploited E.C., repeatedly. Defendant believed that he had purchased E.C., as evidenced by his complaint to law enforcement after she escaped from him.   (PSR ¶ 18; Victim Ltr., p. 3).   Defendant successfully immigrated to the United States from El Salvador, and then used his superior economic position to exploit a teenager from his home country.   A seven-year sentence is warranted to reflect the seriousness of defendant's crime and to provide just punishment for the offense.

In addition, a ten-year period of supervised release is warranted to protect the public from further crimes of the defendant. Both defendant's offense conduct and his behavior in custody, as set forth in Dr. Pyant's report, demonstrate his ability to manipulate other people.   As set forth above, defendant manipulated E.C. Consistently, Dr. Pyant noted that defendant was exceptionally adept at soliciting the aid of inmate peers and assertively directed them to perform certain activities for him.   Despite his health issues, defendant is clearly adept at influencing other people to do what he

wants; a ten-year term of supervision is necessary to ensure that defendant does not exploit anyone else under the age of eighteen.

## V.   Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence of seven years imprisonment, ten years of supervised release on the conditions set forth in paragraph 2 of the plea agreement, and a $100 special assessment.